(C. D. 697)

COLUMBIA MALLEABLE CASTINGS CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 28, 1942)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States arising at the port of Buffalo brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced as "Rough Galv. Malleable Pipe Fttg Castings." Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as articles composed of base metal not specially provided for. It is claimed that said merchandise is properly dutiable at only 20 per centum ad valorem under the provision in paragraph 327 of said act for castings of malleable iron not specially provided for.

Said paragraph 327 reads:

Cast-iron pipe of every description, and cast-iron fittings for cast-iron pipe, 25 per centum ad valorem; cast-iron andirons, plates, stove plates, sadirons, tailors' irons, hatters' irons, but not including electric irons, and castings and vessels wholly of cast iron, including all castings of iron or cast-iron plates which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts; castings of malleable iron not specially provided for; * * * 20 per centum ad valorem * * *.

At the first hearing held at Buffalo on March 27, 1942, the plaintiff offered in evidence the testimony of two witnesses and numerous exhibits. Samples of the merchandise at bar were admitted in evidence as collective exhibit 1.

The plaintiff's first witness, Charles G. Sherwin, purchasing agent for the Grinnell Co. of Canada, testified that his company manufactured both black and galvanized malleable cast-iron fittings for the plumbing trade; that he saw all of the merchandise covered by the within protest before it was shipped from his factory in Toronto to the Columbia Malleable Castings Corporation of Columbia, Pa., the plaintiff herein; and that he prepared the consular invoice and attended to the transportation of the involved merchandise.

At this juncture the witness produced certain samples of galvanized cast-iron malleable elbows, tees, and couplings which were admitted in evidence as collective illustrative exhibit 2.

The witness then proceeded to testify in part as follows:

Q. What is the distinction between fittings and castings?—A. A casting is the unfinished product of a fitting.
Q. Are all of these [Collective Illustrative Exhibit 2] in the unfinished state?—A. They are all in the unfinished state.
Q. This is the state in which they were shipped by you to Columbia Malleable Castings, in the unfinished state?—A. Yes, sir.

Q. Do you know what remains to be done to them to make them usable?—A. They have to be machined. * * *.

Q. Is it a single machining process, or a number?—A. Depending on what it is. In some cases it is single, and in some cases it is double, and in some cases it is triple.

*     *     *     *     *     *     *

Q. Are there different kinds or types of malleable iron castings?—A. Yes, black and galvanized * * *.

At this juncture a sample of a black malleable-iron casting was admitted in evidence as illustrative exhibit A.

The witness after describing the process of producing iron castings testified that after casting, the articles are put into annealing pots where they are annealed, which makes them malleable or flexible; that in his business he had handled finished pipe fittings as well as castings, a sample of such finished pipe fittings being admitted in evidence as illustrative exhibit B; that a pipe fitting is a finished product used for attaching pipes together; that there is no difference between malleable-iron castings and castings of malleable iron; that his company issued a catalog, pages 39, 40, and 41 of which show illustrations of several kinds of castings such as are involved in the present suit, said pages being admitted in evidence as illustrative exhibit C; and that galvanizing is applied to a casting to keep it from rusting, which process necessarily increases its price.

On cross-examination the witness testified that so-called "chamfering" is part of the threading of the casting; that the articles constituting the imported merchandise at bar are all standard sizes and when threaded constitute plumbers' standard equipment; that an order from a customer would have to indicate whether the malleable-iron castings were or were not to be galvanized; and that the process of galvanizing improves the condition of the article.

The plaintiff's second witness, A. L. Mettler, cost accountant in the employ of the plaintiff-corporation since 1937, testified that his company dealt equally in both black rough iron and galvanized rough iron castings; that he saw the merchandise at bar when it was received at his company's factory at Columbia, Pa., and that upon its receipt the merchandise was threaded and chamfered.

The witness then produced a finished tee similar to one manufactured from one of the imported articles which was admitted in evidence as illustrative exhibit D, and testified that in billing merchandise similar to collective exhibit 1 and illustrative exhibit A the witness specified in his invoices and bills of lading that the merchandise consisted of rough iron castings either black or galvanized.

On cross-examination the witness testified that when he used the word "rough" in his direct testimony he meant to indicate that the castings had not been machined, that is, they had not been threaded or chamfered.

At the second hearing held at New York on June 8, 1942, the plaintiff offered in evidence the testimony of two additional witnesses. The first, H. Nelson Albright, manager of the plaintiff-corporation, testified that his company dealt exclusively in malleable-iron castings and malleable cast-iron fittings; that upon receipt of the blank castings in the rough state his company performed a double machining operation upon them by threading and chamfering; that until the castings are threaded and chamfered they are only blank castings and as such not salable; that the advantage of a galvanized malleable-iron casting over a black malleable-iron casting was that the former was protected from rust; that during his 20 years' experience he had never sold articles like collective exhibit 1 and collective illustrative exhibit 2 as malleable fittings; that articles such as collective exhibit 1 or collective illustrative exhibit 2 would not constitute a good delivery for an order for fittings, tees, couplings, or elbows; that merchandise like collective exhibit 1 or collective illustrative exhibit 2 was always sold to customers as rough malleable-iron castings; that he had never sold articles similar to collective exhibit 1 or collective illustrative exhibit 2 without threads to any plumbers or steamfitters; that such articles without threads would be of no use to plumbers or steamfitters; that the machining operations of threading and chamfering increase the sale value of the completed article from 40 to 50 per centum over the rough castings; that rough malleable-iron castings are sold as raw material as so much per pound, whereas finished fittings are sold at so much per piece; that this has been true for the last 20 years; that the word "blank" occurring in the commercial invoice herein as applied to ells, tees, and couplings means rough iron castings intended to be subsequently fabricated into a finished article which would be known as an ell, tee, elbow, etc., depending upon its original shape; and that articles like collective exhibit 1 and collective illustrative exhibit 2, whether black or galvanized, have no commercial use until they have been threaded and chamfered.

On cross-examination the witness testified that rough malleable-iron castings have a commercial value but no practical use; that the galvanizing process is a complete process in itself, performed after the article has been cast; that the rough malleable-iron castings at bar are not partly finished pipe fittings although they are in the form of tees, elbows, and couplings; and that they have no use except to be made into pipe fittings.

The plaintiff's second and last witness, Clarence I. Deshong, sales manager in the employ of the Eastern Malleable Iron Co., manufacturers of rough malleable-iron castings, testified that his company has handled malleable-iron castings similar to those involved herein in wholesale quantities throughout the eastern part of the United

States; that articles like collective exhibit 1 are rough iron castings requiring machining before they can be used; that he had never sold such articles to plumbers or steamfitters; and that such rough malleable-iron castings are always sold by weight at so much per pound.

On cross-examination the witness testified that he would not sell a galvanized casting for the same price as a black casting; that galvanizing was a distinct process started after the casting was completely finished; that he knew of no use for collective exhibit 1 or collective illustrative exhibit 2 except to be made into finished pipe fittings; and that he would not say that they were partly finished pipe fittings although the only thing to be done to them to make them complete pipe fittings was threading and chamfering.

No evidence was offered by the Government.

Upon this record counsel for the Government in his brief filed herein cites the case of *Dulien Steel Products, Inc., et al.* v. *United States,* 27 C. C. P. A. 285, C. A. D. 102, and the more recent case of *Green Kay Corporation et al.* v. *United States,* 29 C. C. P. A. 216, C. A. D. 193, as here controlling.

On the other hand counsel for the plaintiff in their brief filed herein endeavor to distinguish the two cited cases, contending they are not applicable to the facts in the instant case.

We do not agree with the latter contention. It is not disputed that when these castings were annealed they became malleable-iron castings and when they were galvanized they became advanced malleable-iron castings. As stated in the *Dulien* case, *supra,* which involved advanced malleable-iron castings:

We take judicial notice of the fact that castings of malleable iron are not produced merely by casting iron in molds. In order to make castings of malleable iron it is necessary that iron castings be put through the annealing process as aforesaid. This is conceded by the appellants, and is borne out by dictionaries and technical publications. See the definitions of "cast iron" and "malleable iron" found under the word "iron" in Funk and Wagnall's New Standard Dictionary; "The Making, Shaping and Treating of Steel," by the Carnegie Steel Company Bureau of Instruction, fourth edition, pp. 254 and 255; the definition of "malleable castings" in Hawkins' Mechanical Dictionary, p. 345; the definition of "malleable cast iron" given in Lockwood's Dictionary of Mechanical and Engineering Terms, p. 219; and, "malleable cast-iron" in the Encyclopedia Britannica, 14th edition, Vol. 5, p. 2.

Congress distinguished between castings of iron further advanced and castings of malleable iron not specially provided for, in the provisions of paragraph 327. It is clear to us that in the absence of this distinction the merchandise here would be properly classifiable under that part of the paragraph claimed by the appellants, as aforesaid.

In view of this distinction made by Congress, we fail to see how the goods herein could be properly classifiable as claimed.

Again, in the case of *Green Kay Corporation et al.* v. *United States,* *supra,* the same tribunal said, with regard to the castings of malleable iron there before it, that

* * *. They are not only castings, but they are castings which have become fittings ready to use, even though they have not been finished into some other articles in the sense of the holding in the *Grinnell* case. Congress used no language which prescribes the character of advancement of such castings as fall within the provision for castings of malleable iron, although it had done so with regard to ordinary cast-iron castings in the preceding clause. If it had intended castings of malleable iron which became finished fittings to be dutiable under the provision for castings of malleable iron, it seems it would have expressly so stated.

In the instant case the merchandise at bar is admittedly further advanced than merely malleable-iron castings. It has been galvanized, a process which may be said to be analogous to plating the article. Surely it would not do to say that a plated casting was contemplated by the provision invoked by the plaintiff.

On the established facts and the law applicable thereto, we hold that the galvanized castings in question have been properly classified by the collector, and that they are dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as articles composed of base metal and not specially provided for.

All claims of the plaintiff are, therefore, overruled, and judgment will be rendered accordingly.